THOMAS H. HOPE *vs.* PASQUALE VALENTE.

Third Judicial District, Bridgeport, October Term, 1912.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

The complaint alleged that the plaintiff was kicked by a horse of the defendant which the latter had negligently left unharnessed, unattended and tied to the rear of a wagon standing in a public street; also that the horse was a vicious kicking animal and known to be such by the defendant. *Held* that the complaint charged two acts of negligence: one in leaving the horse, even if gentle, in such a place unguarded, and the other in leaving him there in view of his vicious habits.

A person may be negligent in the use of an instrument which in itself is entirely harmless. Accordingly, the question whether one is negligent or not in leaving even a naturally gentle horse unattended

Hope *v.* Valente.

in a public street while tied to the end of a wagon from which he is feeding, is one of fact for the jury in view of all the circumstances in the case.

Knowledge of the vicious propensities of a horse acquired by a servant or agent of the owner, while acting within the fair scope of his employment, will be imputed to the owner.

A party whose request to charge is complied with cannot complain because the trial court did not go further and define the language of the request.

There must be some evidence of the identity and ownership of the horse which is alleged to have injured the plaintiff, before testimony of the vicious habits of the animal is admissible; but the preliminary question of whether such a foundation has already been laid, is one for the trial judge to determine, subject to the ultimate right of the jury to pass upon the sufficiency of the identification in view of all the evidence in the case.

A groom at the stable of a veterinary testified to the vicious habits of a certain horse, and that he had informed the defendant's servant thereof when the latter came to take the horse away. In this court —though not apparently in the court below—the defendant contended that the information communicated by the groom to the servant was inadmissible, since it did not appear that the servant had general charge of the horse, and that until that fact was shown such knowledge on the part of the servant could not be imputed to the master. *Held* that inasmuch as the jury were fully and correctly instructed as to when the knowledge of the servant could be imputed to the master, the defendant could not have been harmed by the testimony, even if it were improperly admitted.

An admission by a party of a material fact, whether made in court or elsewhere, is admissible against him.

Such an admission made by a party during the course of his testimony on a former trial of the cause, may be given in evidence by the adverse party on a subsequent trial, without putting in the former's entire testimony.

Argued October 23d—decided December 19th, 1912.

ACTION to recover damages for personal injuries alleged to have been caused by the kick of a vicious horse which the defendant had negligently left unattended and unharnessed in the street, brought to the Superior Court in New Haven County and tried to the jury before *Williams, J.;* verdict and judgment for the plaintiff for $1,350, and appeal by the defendant. *No error.*

*Spotswood D. Bowers* and *Benjamin Slade,* for the appellant (defendant.)

*George E. Beers* and *Frederick C. Russell,* for the appellee (plaintiff).

THAYER, J. The plaintiff alleges that he was kicked by a horse of the defendant which had been "negligently left unattended, unguarded and unharnessed and tied to the rear of a wagon" in Orange Street. He claimed further that the horse was a vicious, kicking horse, and that the defendant knew of this vice. The complaint has been construed as charging two acts of negligence. *Hope* v. *Valente,* 84 Conn. 248, 250, 79 Atl. 583. There was evidence tending to prove that the defendant was engaged in constructing two houses on Orange Street, that at the time of the plaintiff's injury there were several piles of brick, about four feet high, in the street on the grass plat between the sidewalk and the curbstone, and that there were heaps of sand, broken bricks and pieces of lumber blocking the sidewalk in front of the premises. In the gutter of the street about in front of the premises stood the defendant's wagon with a horse hitched thereto, and to the rear of this wagon was a chestnut mare belonging to the defendant, unharnessed and tied by a halter to the rear of the wagon from which she was feeding. The plaintiff claimed that in passing along the street he turned from the obstructed sidewalk into the street proper, that having passed at the rear of the chestnut mare he turned to pass parallel with her at a distance of about ten feet, when she swung around and kicked him.

The defendant assigns as error the court's instruction that if the jury found it proven that the defendant's horse "was left by him unattended, unguarded and

unharnessed," and tied to his wagon, at the time and place in question, they should then determine "whether, in so doing, he was negligent," that is, "whether . . . he acted as a reasonably prudent . . . man would have acted under like circumstances," and that if they found that the defendant so left the horse, and was in so doing negligent, and the plaintiff, without negligence on his part, was kicked by her, he might recover. This plainly left it for the jury to determine whether it was negligence to leave the horse tied to the wagon in the street, although she was gentle and free from vicious habits. This is the precise ground of the defendant's complaint of the instruction. It is said that as the horse is a domestic animal not naturally vicious or inclined to mischief, an owner is not negligent in leaving it tied in the street unless the individual horse so left is vicious and the owner knows it. But a person may be negligent in the use of an instrument which in itself is entirely harmless. We have said in the case of a runaway horse that it was a question for the jury whether it was negligence to leave the horse unhitched in the street under circumstances disclosed by the evidence, regardless of its habit of running away. *Haywood* v. *Hamm*, 77 Conn. 158, 160, 58 Atl. 695. Under the plaintiff's claim in the present case the defendant was not using the street for the purpose of travel, for which it was provided. The horse was not under the restraint which it would have been if attached in the ordinary manner to a vehicle. It was unharnessed. It was feeding, which might or might not render it impatient of strangers in its vicinity. It was tied to the wagon so that it could not escape if startled at its feeding by the approach of passersby. The sidewalk was obstructed so that travel might thereby be diverted to the traveled part of the street in the vicinity of the horse. Under the facts claimed to have been proved it was proper

Hope *v*. Valente.

to leave it to the jury to determine whether, regardless of the viciousness of the defendant's horse, he was negligent in leaving it in the street in the manner claimed.

Upon the question of the defendant's knowledge cf the vicious propensities of his horse the jury were instructed that "the knowledge of any servant or agent . . . in respect to any vicious propensity or disposition of the horse in question, acquired while driving or having the management, care or control of said horse, by the direction or authority of the defendant, will be imputed to the defendant." This is excepted to by the defendant as permitting the knowledge of any one having the management, care or control of the horse to be imputed to the defendant. This criticism does not take notice of the fact that the charge confines the knowledge to "any servant or agent of the defendant." The jury were later told that this knowledge must have been acquired by the servant or agent while acting within the fair scope of his agency or employment. It is conceded by the defendant's counsel in their brief that this charge could not be complained of had the court defined what constituted "acting within the scope" of their authority. But in this respect the charge followed the ninth request of the defendant and the court was not required to go further than the defendant requested.

The first thirty-three assignments of error relate to the admission of the testimony of O'May, a witness for the plaintiff, who was a groom at the stable of a veterinary, and testified in substance that a chestnut mare, which was brought to the stable and treated there and taken away a short time before the plaintiff's injury, was a vicious kicking animal, that he informed the servant who came for her that she was a kicker. He testified also that he had afterward seen the same mare in the defendant's possession and in the possession

of one Dominic Manturio, a servant of the defendant, and had also seen her in front of the Orange Street premises. It is claimed that this evidence, tending to show viciousness, was not admissible until the identity of the horse at the stable with the one which did the plaintiff injury had been established, and that the question of identity was one for the court. We said, when this case was formerly before us (84 Conn. 248, 254, 79 Atl. 583), that this evidence should have been excluded until the identity of the horse had been shown; and we said that other evidence to the same point should have been admitted because the identity was so clearly shown by it. Without some testimony tending to show that the horse at the stable was the one which injured the plaintiff, the evidence of its viciousness was irrelevant and immaterial. Whether a proper foundation for admitting this evidence had been laid was a preliminary question for the trial judge; but whether the identity was fully established was a question for the jury upon all the evidence in the case, and they were so told in the charge, and instructed that if it was not the same horse O'May's testimony was to be disregarded. The finding shows that at the time the testimony was admitted there was evidence tending to prove that the horse which O'May cared for and testified was vicious was the horse which injured the plaintiff and was the defendant's horse. This was sufficient to justify the court in admitting the testimony.

It is also objected to this testimony that that portion of it was improper which tended to show that information of the viciousness of the horse was communicated by O'May to the servant of the defendant who came to the hospital for the horse, because such knowledge could not be imputed to the master unless the servant is shown to have had general charge of the horse. It does not appear that the testimony was objected

to upon this ground at the time it was admitted. So far as appears the entire testimony was objected to because, as claimed, there had been no identification of the horse. However this may be, the jury were told in the charge that knowledge of a servant was only imputable to the master when acquired while acting within the fair scope of his agency, and also that knowledge of any servant of the defendant in respect to the viciousness of the horse, to be imputable to the defendant, should be acquired while driving or having the management of the horse. The defendant could not therefore have been harmed by the testimony if improperly admitted.

The plaintiff offered in chief a portion of the defendant's testimony upon the former trial of the case, which was claimed as an admission of knowledge by the defendant of the viciousness of the horse. This was objected to upon the ground that the defendant's entire testimony upon the former trial was not offered, the defendant's counsel stating that no objection would be made to the admission of the defendant's entire testimony. An admission by the defendant of a material fact was admissible whether made in court or elsewhere, and we know of no rule which would compel the plaintiff to lose the admission unless he put in the entire evidence of the defendant, that relating to other facts as well as to the one in question. Such procedure would very likely result in the plaintiff being compelled to offer evidence against himself, and perhaps enable the defendant to escape testifying upon the second trial.

The other questions raised by the appeal are either specifically waived in the defendant's brief, or have not been pursued therein or in the oral argument. They therefore call for no discussion here.

There is no error.

In this opinion the other judges concurred.