# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1167

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHRISTOPHER T. LANGFORD,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:01CR00050-001—**John Daniel Tinder**, *Judge.*

ARGUED AUGUST 6, 2002—DECIDED DECEMBER 31, 2002

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* The only question raised by this criminal appeal is the lawfulness of the search that discovered the gun that led to the defendant's conviction of being a felon in possession of a firearm. The search is challenged both as unsupported by probable cause and as executed without due warning to the residents (including the defendant) of the house that was searched.

The search was based on a warrant issued by a state judge. The police officer's affidavit submitted in support of the application for the warrant identified the house and reported that two unidentified informants had re-

ported that one of the residents (not Langford) was dealing drugs from it. A lawful search of the garbage from the house turned up evidence of marijuana use, though not in such a quantity as to show that the defendant or any other residents were actually dealers rather than merely consumers. The garbage contained correspondence of Langford, but the affidavit did not mention it. Also found in the garbage was what the affidavit described as a "drug ledger," consisting of a sheet of paper with the following written on it:

| Mike | 500 | |
|------|-----|------|
| Bills | 300 | 11 |
| Tyla | 300 | 1475 |
| PEE | 150 | +850 |
| Jermery | 100 | 2325 |
| Room | 125 | +3400 |
| | $1475 | $5725 |
| | 3400 | |
| | $4875 | |

The right-hand column differs from the left only in the addition of $850 apparently left out of the left-hand column by accident (the figure "11" doubtless just indicates the steps in adding 850 to 1475 of carrying 1000 from the hundreds column, where 800 is added to 1400, to the thousands column, where 1 becomes 2 as a result of the carrying). Confining ourselves therefore to the left-hand column, the only sense we can make of it is of a list of amounts received from or owed to several people (although "Bills" might refer to expenses or receivables, "Room" might refer to rent owing or owed—several unrelated persons were living in the house—and "PEE" might be an abbreviation for some category of expenses or receipts), which are added up and then for unknown reasons increased by $3400.

The affidavit does not explain by what reasoning this becomes revealed as a drug ledger, and as to that all the officer could say at trial was that he found the rounding of the numbers to the nearest $25 suspicious. No evidence concerning similar lists found in other cases to be drug records was introduced that might have provided a rational basis for the officer's hunch. The district judge said that the list was "sufficiently described as a ledger for dealing in drugs," but he too suggested no basis for the characterization.

Putting the list to one side as insolubly ambiguous on this record, we are left with a very thin case for a warrant to search for evidence of drug dealing as opposed to drug use. The ratio of drug users to drug dealers is very high, so that if this warrant is lawful, the implication is that any hostile neighbor can report a person as a drug dealer and if the police look in his garbage and find that he is among the several million users of "recreational" drugs in this country the police can search his house for evidence that he is a dealer even though they have no reason to think that he is one. This is not a case in which the tipster is a confidential informant, someone in whom the police have some basis for reposing confidence, as in *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 950-51 (8th Cir. 2001), and in *United States v. Le*, 173 F.3d 1258, 1265-67 (10th Cir. 1999), or in which a garbage search (which does not require probable cause) turns up evidence suggestive of dealing rather than of mere use.

Mere possession of marijuana is a crime in Indiana and the tips from the informants plus the search of the garbage provided probable cause to believe that someone in the house was committing that crime, but the government does not seek to defend Langford's conviction on that basis. True, the search for drugs in the house would have uncovered the gun, but we haven't found cases

(nor does common sense suggest) that guns are typically associated with the possession of marijuana, as distinct from dealing in marijuana and other illegal drugs. Property cannot be seized merely because it is visible to police conducting a lawful search; it must appear to be contraband or evidence of crime. *Horton v. California*, 496 U.S. 128, 136-37 (1990). Otherwise the police could have carted off the entire contents of the house.

Thin as the basis of the warrant to search for evidence of drug dealing was, it was not so thin as to defeat the rule that evidence obtained in a search is not to be excluded at trial if the search was pursuant to a warrant issued by an authorized judicial officer, provided that in executing the warrant the police were not acting in bad faith, *United States v. Leon*, 468 U.S. 897, 923 (1984), which they would have been here if for example they had known that the affidavit submitted in support of the application for a warrant contained material falsehoods. *Id.*; *United States v. McAllister*, 18 F.3d 1412, 1416 (7th Cir. 1994). Of that there is no indication. Police are not legal experts and are entitled to rely upon a warrant duly issued by a judicial officer on the basis of an affidavit that so far as the police know is accurate and complete, so that the only issue is its legal sufficiency, a matter for the judicial officer to determine. See *United States v. Koons*, 300 F.3d 985, 991-92 (8th Cir. 2002), a factually similar case to this case.

The defendant argues that in any event the police broke down the door of the house without complying with the rule that in the absence of an emergency police executing a search or arrest warrant must knock and announce their purpose and identity and give the occupant a reasonable chance to open the door before they enter forcibly. 18 U.S.C. § 3109; *United States v. Ramirez*, 523 U.S. 65, 73

(1998); *United States v. Espinoza*, 256 F.3d 718, 722 n. 3, 723 (7th Cir. 2001). Whether the police complied with the rule in this case is in dispute, but the dispute need not be resolved because we hold that violation of the rule does not authorize exclusion of evidence seized pursuant to the ensuing search. As we said in *United States v. Jones*, 149 F.3d 715, 716-17 (7th Cir. 1998), and now elevate to a holding, "it is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant." See also *United States v. Folks*, 236 F.3d 384, 388 (7th Cir. 2001); *United States v. Jones*, 214 F.3d 836, 837-38 (7th Cir. 2000); *People v. Stevens*, 597 N.W.2d 53, 64 (Mich. 1999). There are contrary decisions. See *United States v. Banks*, 282 F.3d 699, 703 (9th Cir. 2002); *United States v. Dice*, 200 F.3d 978, 986-87 (6th Cir. 2000); *United States v. Marts*, 986 F.2d 1216, 1219-20 (8th Cir. 1993); *Mazepink v. State*, 987 S.W.2d 648, 656-58 (Ark. 1999). (The Justice Department has petitioned for certiorari in the *Banks* case.) The concern that animates those decisions is that unless evidence obtained in a search that violates the knock-and-announce rule is excluded, there will be no deterrent to such violations. But that is not true now that 42 U.S.C. § 1983 and the *Bivens* doctrine have made tort damages an effective remedy for constitutional violations by federal or state law enforcement officers.

The fruits of an unlawful search are not excludable if it is clear that the police would have discovered those fruits had they obeyed the law. That is the "inevitable discovery" rule, which the Supreme Court adopted in *Nix v. Williams*, 467 U.S. 431, 448 (1984); without it the exclusionary remedy would overdeter; and it is fully applicable here. Armed with a valid search warrant, the police in our case would have discovered the defendant's gun even

if they had given him enough time to answer their knock before they broke the front door down.

Another route to the same conclusion is to observe that the knock-and-announce rule is not intended to protect people against being subjected to searches or to limit the obtaining of evidence by means of searches; it is not a rule that, like the Fourth Amendment itself, is intended to provide a privilege to withhold evidence. Therefore there is no logic to using it to exclude evidence obtained by a search. Of course in some cases the delay in entering the premises to be searched that the rule entails would enable a defendant to secrete evidence; but in such cases the rule is waived. 18 U.S.C. § 3109; *United States v. Ramirez, supra*, 523 U.S. at 71, 73; *United States v. Dice, supra*, 200 F.3d at 983.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*