# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-4086

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TANYA SUTTON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02-CR-47-S—**John C. Shabaz**, *Judge.*

———————

ARGUED MAY 12, 2003—DECIDED JULY 14, 2003

———————

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* As part of an investigation into a counterfeit check scheme, police officers from Madison, Wisconsin, prepared to search Tanya Sutton's home for evidence relating to that scheme, including a computer allegedly used to produce false paychecks. At a briefing session prior to the execution of a warrant authorizing the search of Sutton's home, the police discussed several potential threats to officer safety—including the fact that pit bull dogs (known for their hostility to strangers) had been seen on the property (although it was unclear whether the dogs belonged to Sutton or a neighbor) and the fact that some individuals seen entering Sutton's home had a history of drug and weapons offenses, raising the possibility that weapons may be present. In addition, the officers discussed the con-

figuration of the home (a two-unit, mirror-image town home), which provided little to no opportunity for cover for the officers approaching the front door should something go wrong during the execution of the warrant. Given these concerns, the officers decided to have their firearms at the ready when they executed the warrant.

According to Madison Police Officer Deanna Reilly, the point person for the entry team, the officers prepared to enter Sutton's home on the evening of March 27, 2001. They gathered at the southern edge of Sutton's garage, and Officers Reilly and Veatch approached the front door. Reilly noticed that the screen door was almost ripped out—consistent with the presence of dogs. She also noted that the inner door was slightly ajar. As Officer Veatch held open the screen door, Officer Reilly forcefully knocked on the inner door with her left hand, with her firearm in her right, and the force of the knock further opened the already ajar door.

Given her now-exposed position in the doorway (a position within the triangular area radiating from the front door known as the "fatal funnel" because of the higher risk of officers being shot when standing there), Reilly testified that she made the instantaneous decision to then enter the home. At the same time that she crossed the threshold, she loudly announced, "Police! Search warrant!" After entering the home, the police found Sutton alone with her two young children; no weapons or pit bulls were found during the subsequent search.

Sutton was ultimately charged with conspiracy to commit bank fraud and with bank fraud. Before trial, she sought to suppress the evidence obtained as a result of the search of her home, arguing that the search had violated the Fourth Amendment because the police had unreasonably failed to comply fully with the requirement identified by the Supreme Court in *Wilson v. Arkansas* that police executing a

search warrant must first knock and identify themselves and their purpose before entering the place to be searched. 514 U.S. 927, 929 (1995). After presenting her case before a magistrate judge at a suppression hearing, the magistrate recommended, and the district court agreed, that Sutton's motion to suppress be denied. The district court found that the Madison officers' failure to comply fully with the knock-and-announce requirement was reasonable based on the circumstances and the information the officers had at the time.

After her suppression motion was denied, Sutton entered a conditional plea of guilty under Federal Rule of Criminal Procedure 11(a)(2) to one count of conspiracy and one count of bank fraud. She was sentenced to two concurrent terms of twenty-one months imprisonment. Sutton now appeals the denial of her suppression motion.

## ANALYSIS

The Fourth Amendment protects individuals from "unreasonable" searches of their persons, homes, and possessions. U.S. CONST. amend. IV. The Supreme Court has held that, as part of that guarantee, "the Fourth Amendment incorporates the commonlaw requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997) (citing *Wilson*, 514 U.S. at 929). Whether the police comply with this knock-and-announce rule factors into the determination of whether or not a search is reasonable under the Fourth Amendment. *Id.* at 934.

We first address the remedy that Sutton pursues in this appeal. Even assuming that the Madison police officers failed to comply fully with the knock-and-announce rule, the remedial path Sutton seeks is foreclosed by this Cir-

cuit's precedent: after our decision in *United States v. Langford*, suppression of evidence obtained as a result of a search subsequent to a knock-and-announce violation is not available as a remedy. 314 F.3d 892, 894 (7th Cir. 2002), *reh'g denied, reh'g en banc denied*, 2003 U.S. App. LEXIS 6064 (7th Cir. Mar. 27, 2003). In *Langford*, we held that "violation of the rule does not authorize exclusion of evidence seized pursuant to the ensuing search" because, under the inevitable-discovery doctrine, "it is hard to understand how the discovery of evidence inside a house could be anything but 'inevitable' once the police arrive with a warrant." *Id.* (quotations omitted); *see also United States v. Jones*, 149 F.3d 715, 716-17 (7th Cir. 1998) (noting that the inevitable-discovery doctrine would likely apply because "an occupant would hardly be allowed to contend that, had the officers announced their presence and waited longer to enter, he would have had time to destroy the evidence."[1]

---

[1] The Supreme Court in *Wilson* adverted to the possible application of the inevitable-discovery doctrine in the knock-and-announce context, but rested its decision on other grounds:

> Respondent and its *amici* also ask us to affirm the denial of petitioner's suppression motion on an alternative ground: that exclusion is not a constitutionally compelled remedy where the unreasonableness of a search stems from the failure of announcement. Analogizing to the 'independent source' doctrine . . . and the 'inevitable discovery' rule . . . respondent and its *amici* argue that any evidence seized after an unreasonable, unannounced entry is causally disconnected from the constitutional violation and that exclusion goes beyond the goal of precluding any benefit to the government flowing from the constitutional violation. Because this remedial issue was not addressed by the court below and is not within the narrow question on which we granted certiorari, we decline to address these arguments.

*Wilson*, 514 U.S. at 937 n.4.

While we recognize that some courts have refused to apply the inevitable-discovery doctrine to knock-and-announce violations, apparently out of fear that such a path may render the knock-and-announce rule meaningless, *see, e.g., State v. Lee*, 821 A.2d 922, 946 (Md. 2003), we do not agree that precluding suppression as a remedy renders the rule a mere formality.

As we noted in *Langford*, alternative remedies are available for those who are injured by an unreasonable no-knock search, through claims under 42 U.S.C. § 1983 and the *Bivens* doctrine. *Langford*, 314 F.3d at 894-95. Those remedies will continue to deter police from violating the knock-and-announce rule, without unfairly disadvantaging the government. *Cf. Nix v. Williams*, 467 U.S. 431, 446 (1984) ("Significant disincentives to obtaining evidence illegally—including the possibility of departmental discipline and civil liability—also lessen the likelihood that the ultimate or inevitable discovery exception will promote police misconduct." (citing *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 397 (1971))).

Understandably, Sutton makes several attempts to distinguish *Langford*. First, Sutton urges us to confine the holding of *Langford* to its facts, declaring that suppression is unavailable as a remedy only in gun- or drug-related cases, situations in which the potential danger to police is clear. In Sutton's case, she was under investigation for a nonviolent, white-collar crime, so suppression should be an available remedy. Such distinctions may have some bearing on whether or not a knock and an announcement are required to render a search reasonable, *cf. Richards*, 520 U.S. at 394 (noting that the "actual circumstances—petitioner's apparent recognition of the officers combined with the easily disposable nature of the drugs—justified the officers' ultimate decision to enter without first announcing their presence and authority"), but it is difficult to see how the underlying crime should affect the *remedy* available for a Fourth Amendment violation.

Relatedly, Sutton contends that *Langford* is contrary to that part of the decision in *Richards* where the Supreme Court rejected a blanket rule dispensing with the knock-and-announce requirement in all drug cases (a generalization supposedly justified by the higher-than-average risks of violence or destruction of evidence associated with drug searches). *Id.* at 391. *Richards*, she suggests, disapproves of anything but a case-by-case approach to analyzing knock-and-announce violations. *See also Lee*, 821 A.2d at 941 ("To apply the inevitable discovery rule . . . whenever there is a valid warrant, to render admissible, any evidence seized in execution of that warrant in violation of the knock and announce rule is, in effect, to create a blanket exception to that rule for all cases involving valid search warrants . . . precisely what *Richards* prohibits.").

We read *Richards*, however, as emphasizing that the *reasonableness* of any given search will depend on a multiplicity of factors, precluding any generalizations as to whether a certain type or class of search would pass muster under the Fourth Amendment. But while a reasonableness determination necessarily depends on a number of factors, fashioning and applying an appropriate *remedy* once a search is deemed unreasonable presents a different issue. In that latter situation, the question is identifying those future steps that should be taken to best rectify an injury suffered—with little concern as to how that injury was caused. *Cf. United States v. Espinoza*, 256 F.3d 718, 724 (7th Cir. 2001) ("[W]hether the exclusionary rule is appropriately imposed in a particular case is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police misconduct." (quotation omitted)).

Sutton also argues that our decision in *Langford* is contrary to *Miller v. United States*, where the Supreme Court endorsed the remedy of suppression for evidence obtained as a result of an illegal police entry into a home. 357 U.S.

301, 313-14 (1958) ("Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed."). But simply because suppression is available as a remedy does not mean that it is *mandatory* for any violation of the Fourth Amendment's knock-and-announce requirement. *See Espinoza*, 256 F.3d at 724 ("We know, however, that the exclusionary rule is not a constitutionally compelled remedy for violations of the Fourth Amendment.").[2]

Even if suppression were a remedy available to Sutton, we do not believe that it would be warranted on the facts presented here. In enunciating the knock-and-announce rule, the Supreme Court acknowledged that the law enforcement interests in ensuring officer safety and in preventing the destruction of evidence may weigh in favor of unannounced entry. *Wilson*, 514 U.S. at 936. Toward that end, police may make an unannounced, no-knock entry if they have "a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile." *Richards,* 520 U.S. at 394.

In this case, the magistrate judge found that while the police had not fully complied with the rule when executing the warrant for Sutton's home, less than full compliance was nonetheless reasonable under the circumstances, as the

---

[2] Sutton also notes that the United States Supreme Court has granted certiorari in *United States v. Banks*, 282 F.3d 699 (9th Cir. 2002), *cert. granted*, 123 S. Ct. 1252 (Feb. 24, 2003), a case which involves the question of how long officers are required to wait after knocking and announcing their presence before forcibly entering the premises to be searched. But until the Supreme Court issues a decision in that case (and that decision addresses the question of the appropriate remedy for a knock-and-announce violation), *Langford* remains controlling in this circuit.

officers had a "reasonable and articulable suspicion" that compliance might place them in danger. The magistrates's report specifically noted that given the information that pit bulls had been seen on the property (along with finding the ripped out screen door as the officers approached the house), that individuals with drug or weapons convictions had been seen entering the home, and that the configuration of the house provided no cover for the executing officers, the decision by Reilly to enter the home while simultaneously announcing her presence without first waiting to be admitted was reasonable under the circumstances. We additionally note that, according to Officer Reilly's testimony at the suppression hearing, the police officers had begun to comply with the rule, by both knocking on the partially open front door and announcing their presence even as they entered the home. Reilly and her team, however, did not wait until an occupant of the house admitted them (or refused to do so). The fact that the officers apparently set out to comply with the rule, but changed their plans once the circumstances of the search increased the risk to their safety, weighs in favor of a finding of reasonableness.

## CONCLUSION

After this Court's decision in *Langford*, suppression of evidence seized as a result of an unannounced, no-knock search is unavailable as a remedy. Even were such a remedy available, it would not be warranted in this case, as the officers' failure to comply fully with the knock-and-announce rule was reasonable under the circumstances. The decision of the district court denying Sutton's motion to suppress the subsequently seized evidence is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*