**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2005
Decided March 21, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-2391

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division |
| v. | No. 1:04CR018 TLS |
| CHARLES A. SMITH, *Defendant-Appellant.* | Theresa L. Springmann, *Judge.* |

**ORDER**

Indiana authorities found crack and powder cocaine and two handguns after executing arrest warrants for Charles Smith at his residence and then obtaining a search warrant for the premises. Smith entered a conditional guilty plea to possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), after the district court had denied his motion to suppress. He was sentenced to 70 months' imprisonment and four years' supervised release. In this appeal, Smith challenges the suppression ruling. We uphold that ruling and affirm his conviction.

On February 27, 2004, officers from the Allen County Sheriff's Department executed three arrest warrants for Smith at a Fort Wayne residence listed as his address on one of those warrants. During the arrest, the officers observed

marijuana in plain view and obtained a search warrant. Searching pursuant to that warrant, they discovered 19 grams of crack and 58 grams of powder cocaine. The marijuana and two stolen handguns also were seized from the house. In post-arrest statements, Smith admitted that all of the drugs and the two guns belonged to him. Smith was charged in federal court with possession of crack and powder cocaine with intent to distribute.

Smith moved to suppress the physical evidence and his statements. In his written motion, Smith did not contest the validity of the arrest warrants or the officers' authority to enter the residence based on those warrants. Instead he simply argued that before obtaining the search warrant the officers conducted a search of the house that exceeded the permissible scope of a search incident to arrest. Smith did not elaborate further in his motion.

During the suppression hearing, Detective Steven Stone testified that he went with Officers Steve Snyder and Mike Neumann to 3602 Weisser Park to arrest Smith on one misdemeanor and two felony warrants. That address was given for Smith on one of the warrants. Stone had recently received a tip via the state's "Most Wanted" website that Smith was driving a grey Mercury and could be found at the Weisser Park address, and the officer's own research had disclosed that Smith "had listed that address as his residence." Tstone and the other officers thus went to 3602 Weisser Park, where they observed a grey Ford parked outside. Stone testified that he approached the front door and either knocked or rang the doorbell. When no one responded, he opened the screen door and pounded loudly on the wooden door, which already was ajar and swung open from the force of his knock. Stone then yelled, "Allen County Sheriff's Department," and heard a woman respond from upstairs: "Hold on. I'm coming." The woman, later identified as Dolly Elliott, Smith's fiancée, then came down the stairs. Stone recounted telling her that he and the other officers were there for Smith, and that she needed to get him because they had a warrant for his arrest. Elliott responded, "Hold on," and returned upstairs. At this point, Stone testified, he had one foot inside the door so he could enter the house quickly if someone tried to escape or retreat from the entrance if someone came down with a gun.

After Elliott departed, Stone said, he surveyed the living room from the doorway. As he did so, he noticed marijuana on a table and the floor. After waiting approximately one minute, Stone continued, he yelled Smith's name and heard a man respond: "Hold on. I'm coming." Smith then came down the stairs, and Stone, along with Officer Neumann, fully entered the residence. Stone went to the marijuana while Neumann handcuffed Smith and sat him on the corner of the living room couch. Stone testified that he then conducted a protective sweep of the area around Smith and discovered a shoe box next to the couch with a loaded .45 caliber handgun inside. Stone called the Allen County Drug Task Force to see if

detectives there wished to come to the scene and process the marijuana. Detectives Steven Haxby and Jack Cain came to the Weisser Park residence in response and spoke with Smith and Elliott. Afterwards, Stone said, Haxby called the prosecutor's office and got approval to seek a search warrant. Stone and Cain left to obtain the warrant.

Detective Haxby, who remained behind, testified that he gave *Miranda* warnings to Smith and, while Detectives Stone and Cain were away, questioned him about the drugs. Haxby said that Smith admitted ownership of all of the drugs in the house. Later, after Stone and Cain had returned with the search warrant, Haxby asked Elliott if she would tell him if there were any other drugs anywhere in the house. Elliott, he said, directed him to a kitchen cupboard where he found the crack and powder cocaine.

Detective Cain testified that, while executing the search warrant, he searched a nightstand drawer in the master bedroom and found a saucer with flecks of cocaine, approximately $1,200 in currency, a .357 or .38 caliber handgun, and .45 caliber ammunition. Cain had been alerted to the open drawer, he said, by Officer Neumann, who noticed the gun while conducting a security sweep immediately after Smith's arrest. In the bedroom Cain also found traffic tickets issued to Smith showing the Weisser Park address as his residence. Cain said that he asked dispatch to run a check on the guns found in the living room and bedroom and was told that both were stolen.

Detective Dean Huey testified that he met with Smith later that day in the lockup and advised him of his Constitutional rights. Huey said Smith agreed to speak with him without a lawyer and told him that all of the drugs belonged to him, and that he purchased the guns "off the street."

Smith also testified at the suppression hearing. He said that he stayed overnight at the Weisser Park residence from time to time to babysit his daughter, and that his fiancee's name was on the lease. Smith clarified that he was not claiming that the arrest warrant listing his address as 3602 Weisser Park was incorrect. Although Smith could not say the front door was locked when the officers came to his house, he testified that it was his habit to close the front door at night and that it was securely closed when the officers arrived the morning he was arrested. He conceded, however, that: "I heard the doorbell ring, and then I heard a slight knock and then I heard a boom, boom, boom boom. . . . And the door popped open. Then I heard, 'Sheriff's Department.'"

After the suppression hearing, the district court invited the parties to submit written arguments. For the first time, Smith contended that suppression of the physical evidence and his statements was required because the officers had entered

"his residence" without first knocking and announcing their presence as required by the Fourth Amendment. Alternatively, he contended that the officers should never have found the two guns before getting the search warrant because neither gun was detected during a lawful search incident to arrest. The government disputed both assertions, and also noted that in *United States v. Langford*, 314 F.3d 892 (7th Cir. 2002), this court held that suppression is not an appropriate remedy for a violation of the knock-and-announce requirement. In denying Smith's motion, the district court found that the arresting officers complied with the knock-and-announce requirement because Detective Stone knocked on the door, announced who he was and why he was there, and spoke with Smith's fiancée, Elliott, before entering the dwelling. The court found that the front door swung open from the force of Stone's knock, and that Stone did not cross the threshold with even one foot until Elliott already had "answered the door" by telling Stone that she would go get Smith. The court also rejected Smith's argument about the two guns.

On appeal, Smith, through new counsel, has abandoned all of his previous arguments except his contention that the officers violated the knock-and-announce requirement of the Fourth Amendment. He also—for the first time—argues that the arrest warrants were insufficient to allow the officers to enter 3602 Weisser Park because they had no reason to believe Smith was there. When reviewing a suppression ruling, we review legal questions *de novo* and underlying factual determinations for clear error. *United States v. Cellitti*, 387 F.3d 618, 621 (7th Cir. 2004). We will uphold a district court's factual determinations so long as they are "plausible in light of the evidence." *Piggie v. Cotton*, 342 F.3d 660, 663 (7th Cir. 2003).

Smith's first argument, that the challenged evidence should have been suppressed because the officers violated the knock-and-announce rule, is foreclosed by circuit precedent. The government makes the point in its brief, as it did in the district court, that in *Langford* we held that suppression is not an appropriate remedy in this circuit for a violation of the knock-and-announce requirement. *Langford*, 314 F.3d at 894; *see United States v. Sutton*, 336 F.3d 550, 552 (7th Cir. 2003) (following *Langford*); *United States v. Brown*, 333 F.3d 850, 853 (7th Cir. 2003) (same). By failing to address *Langford* in his initial brief or in a reply, Smith effectively has conceded the point.

But *Langford* aside, our decision would be no different. Smith's argument that Detective Stone violated the knock-and-announce requirement directly contradicts the district court's factual findings that Stone knocked on the door, announced who he was and why he was there, and did not enter the dwelling until he explained his visit to Elliott. Nothing in Smith's testimony contradicts Stone's account; Smith said he heard the knock and the announcement, but was not downstairs at the time to see whether Stone announced himself prior to putting one

foot inside the door.  The district court's factual finding was therefore not clearly erroneous.  And since Stone remained outside until Elliott "answered" the door by acknowledging the officer's presence and purpose, the knock-and-announce requirement was satisfied.

Smith next argues—for the first time—that Stone's entry into 3602 Weisser Park violated the Fourth Amendment because Stone had no reason to believe he would find Smith at that address when he entered.  We will review a forfeited suppression argument for plain error but only if the defendant has shown good cause for failing to raise the argument in the district court.  *See United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005).  Smith has not even attempted to explain why he raises this argument for the first time on appeal, so we need not review the argument at all.

Furthermore, the relevant question is whether Detective Stone had reason to believe Smith was inside the house when he *entered*, not when he *approached*.  *See Payton v. New York*, 445 U.S. 573, 603 (1980) (holding that police officer with arrest warrant may enter suspect's residence to execute that warrant without a separate search warrant so long as there is "reason to believe" suspect will be found there); *United States v. Pallais*, 921 F.2d 684, 690 (7th Cir. 1990) (same); *see also Hadley v. Williams*, 368 F.3d 747, 750 (7th Cir. 2004) (explaining that police officer does not need warrant to knock on person's door).  Here, the district court found that Stone entered the premises only after Elliott said she would get Smith from upstairs, and, as we have said, this finding is not clearly erroneous.  It follows that Stone obviously knew for certain that Smith was inside by the time he actually put his foot in the door.  Thus, the argument that Stone did not have "reason to believe" Smith was present is frivolous.

AFFIRMED.