******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PRESCOTT, J., concurring. I agree with the opinion of the majority that the trial court improperly rendered summary judgment in favor of the defendant, Kostas Tsiongas. In reaching this conclusion, however, I conclude, unlike the trial court, that the fact that the dog that bit the plaintiff, Isha Sen, in this case is a pit bull is a relevant factual consideration in assessing whether the landlord-defendant had constructive knowledge of the dog's vicious propensities.[1] Because the question of whether, in the absence of any consideration of the breed of the dog in this case, the trial court properly rendered summary judgment in favor of the defendant is a close one, I am of the view that it is appropriate to address the relevance of the breed of the dog.

Numerous courts have concluded that pit bulls or mixed breed pit bulls pose dangers to people greater than most, if not all, other breeds of dogs. See, e.g., *Altman* v. *High Point*, 330 F.3d 194, 206 (4th Cir. 2003) ("pit bulls . . . are a dangerous breed of dog"); *Vanater* v. *South Point*, 717 F. Supp. 1236, 1241 (S.D. Ohio 1989) ("[w]hile [p]it [b]ulls are not the only breed of dog which can be dangerous or vicious, it is reasonable to single out the breed to anticipate and avoid the dangerous aggressiveness which may be undetectable in a[n] [individual] [p]it [b]ull"); see also *Tracey* v. *Solesky*, 427 Md. 627, 644 n.18, 50 A.3d 1075 (2012), superseded by statute as stated in *Phillips* v. *J Bar W, Inc.*, Docket No. 1167, 2017 WL 4876762, *4 (Md. Spec. App. October 27, 2017).[2]

Many localities have banned or highly regulated ownership of pit bulls, against constitutional challenge, because of the pit bull's vicious tendencies and ability to cause severe injuries. See, e.g., *American Dog Owners Assn., Inc.* v. *Dade County*, 728 F. Supp. 1533, 1538–43 (S.D. Fla. 1989); *Starkey* v. *Chester*, 628 F. Supp. 196, 197–98 (E.D. Pa. 1986); *Holt* v. *Maumelle*, 307 Ark. 115, 117–19, 817 S.W.2d 208 (1991); *Colorado Dog Fanciers, Inc.* v. *Denver*, 820 P.2d 644, 650–54 (Colo. 1991) (en banc); *State* v. *Peters*, 534 So. 2d 760, 763–65 (Fla. App. 1988), review denied, 542 So. 2d 1334 (Fla. 1989); *American Dog Owners Assn., Inc.* v. *Des Moines*, 469 N.W.2d 416, 417–19 (Iowa 1991); *Hearn* v. *Overland Park*, 244 Kan. 638, 647–50, 772 P.2d 758, cert. denied, 493 U.S. 976, 110 S. Ct. 500, 107 L. Ed. 2d 503 (1989); *Bess* v. *Bracken County Fiscal Court*, 210 S.W.3d 177, 181–83 (Ky. App. 2006); *Garcia* v. *Tijeras*, 108 N.M. 116, 118–24, 767 P.2d 355 (App.), cert. denied, 107 N.M. 785, 765 P.2d 758 (1988); *Toledo* v. *Tellings*, 114 Ohio St. 3d 278, 281–84, 871 N.E.2d 1152 (2007), cert. denied, 552 U.S. 1225, 128 S. Ct. 1302, 170 L. Ed. 2d 140 (2008); *Greenwood* v. *North Salt Lake*, 817 P.2d 816, 818–21 (Utah 1991); *Dog Federation of Wisconsin, Inc.* v. *South Mil-*

*waukee*, 504 N.W.2d 375 (Wis. Ct. App.), review denied, 508 N.W.2d 423 (Wis. 1993). Furthermore, several branches of our military ban pit bulls from housing facilities on military bases because of concerns regarding the breed's tendency toward viciousness. See, e.g., D. Conkright, Department of the Army, "Memorandum for See Distribution: United States Army Garrison Humphreys, Policy Letter #34, Ownership and Control of Pets," (July 21, 2013), available at https://www.army.mil/e2/c/downloads/328371.pdf (last visited August 12, 2019).

In light of the pit bull breed's vicious tendencies, at least two courts have held that it is "objectively reasonable" for a person to assume an approaching pit bull is vicious even though that individual pit bull is, in fact, "a friendly, nonviolent dog who would not have harmed [others] . . . ." *Warboys* v. *Proulx*, 303 F. Supp. 2d 111, 118 and n.13 (D. Conn. 2004); see also *United States* v. *Sutton*, 336 F.3d 550, 551, 554 (7th Cir. 2003) (holding that less than full compliance with knock and announce rule was reasonable under circumstances, in part, because "pit bull dogs [known for their hostility to strangers] had been seen on the property," which police identified as "[a] potential [threat] to officer safety"); *Pickens* v. *Wasson-Hunt*, United States District Court, Docket No. 04-0678-CV-W-HFS (W.D. Mo. August 7, 2006) (determining that police officers were not unreasonable in directing their weapons at pit bull who was not acting aggressively because "it is clear that the unquantifiable, unpredictable aggressiveness and gameness of pit bulls make them uniquely dangerous").

In *Warboys*, the court determined that a police officer was not required to wait until the pit bull leaped toward him to take protective action. *Warboys* v. *Proulx*, supra, 303 F. Supp. 2d 118. In making this determination, the court considered extensively the vicious tendencies of the pit bull breed. See id., 118–19 n.13. On the basis of this information, the court concluded that "it is reasonable to single out the [pit bull] breed to anticipate and avoid the dangerous aggressiveness [that] may be undetectable in a[n] [individual] [p]it [b]ull." (Internal quotation marks omitted.) Id., 119 n.13. Thus, the court in *Warboys* determined that the officer did not need to know about the behavioral characteristics or propensities of the *individual* pit bull approaching him; the fact that the pit bull breed itself is known for violent behavior was a sufficient basis for the officer to determine how to treat the approaching dog.

Although breed does not establish by itself a prima facie case of constructive knowledge of danger, it is a relevant factual consideration to be evaluated along with the other evidence. In light of the danger some pit bulls pose to people, some courts have held that evidence regarding the vicious tendencies of the pit

bull breed may be considered by a jury as part of its determination of whether a defendant had reason to know of an individual pit bull's dangerousness.[3] See, e.g., *Drake* v. *Dean*, 15 Cal. App. 4th 915, 923–24, 19 Cal. Rptr. 2d 325 (1993) (determining that evidence of pit bulls historically being bred for aggressiveness may be considered by jury to consider dangerousness of individual pit bull); *Giaculli* v. *Bright*, 584 So. 2d 187, 188, 189 (Fla. App. 1991) (holding that landlord could be held liable for injuries to plaintiff's son caused by neighbor's pit bull because "it is not necessary that pit bulls be declared vicious per se under the law in order for the landlord and owners to be placed on notice that a tenant has a vicious dog" and, therefore, "[t]he fact that the dog was barking and lunging, particularly in light of the characteristics of pit bulls, is sufficient for a jury to reasonably conclude that the landlord was on notice of the vicious propensity of the dog"); *Hampton ex rel. Hampton* v. *Hammons*, 743 P.2d 1053, 1056, 1061 (Okla. 1987) (holding that "evidence relating to the nature of pit [bulls] as a breed is properly admissible" because it is relevant in determining whether defendant is liable for common-law negligence).

Moreover, an animal's type has been a consideration our Supreme Court has used to determine whether the owner of the animal is liable for the injuries it caused.[4] The court has held that, even in the absence of evidence purporting to show the vicious tendencies of an *individual animal*, an owner may be held liable for negligence for the foreseeable harms[5] of an animal that is a part of a "*class of animals* that is naturally inclined to cause such injuries . . . ."[6] (Emphasis added.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 306, 87 A.3d 546 (2014); see id. (holding that "the owner or keeper of a domestic animal has a duty to take reasonable steps to prevent injuries that are foreseeable because the animal belongs to a class of animals that is naturally inclined to cause such injuries, regardless of whether the animal had previously caused an injury or was roaming at large and, accordingly, the owner may be held liable for negligence if he or she fails to take such reasonable steps and an injury results"); see also *Hope* v. *Valente*, 86 Conn. 301, 303–305, 85 A. 541 (1912) (holding that, even in absence of evidence concerning behavioral tendencies of defendant's horse, defendant may be liable for negligence based on manner in which horse was left in street while feeding).

Our Supreme Court in *Vendrella*, however, declined to classify a horse as presumptively dangerous and refused to hold its keeper strictly liable for the harms it caused. *Vendrella* v. *Astriab Family Ltd. Partnership*, supra, 311 Conn. 307–308. Instead, the court determined that because "the plaintiffs' evidence . . . created a genuine issue of material fact as to whether horses have a natural inclination to bite humans, the case must be submitted *to the trier of facts so that it may decide as*

*a matter of fact* whether the plaintiffs have met their burden of proof on that issue and, if so, whether the defendants were negligent in controlling [the horse]." (Emphasis in original.) Id., 308. Hence, the court held that it was for the trier of fact to determine whether the "plaintiff's injuries were foreseeable and, if so, what the appropriate standard of care was, whether the defendants breached that standard of care and, if they did, whether the breach was a proximate cause of the minor plaintiff's injuries." Id.; see also *Hope* v. *Valente*, supra, 86 Conn. 304–305 (holding that "[u]nder the facts claimed to have been proved it was proper to leave it to the jury to determine whether, regardless of the viciousness of the defendant's horse, he was negligent in leaving it in the street in the manner claimed").

I arrive at a conclusion similar to that of our Supreme Court in *Vendrella*. I do not posit that all pit bulls are vicious, nor do I contend that a landlord is or should be strictly liable for injuries caused by a tenant's pit bull. Indeed, if the pit bull in the present case was known to lick affectionately every passerby and the defendant had observed such behavior, then it is unlikely that the trier of fact would find that the defendant had constructive knowledge that the dog posed a danger to the other tenants.

Furthermore, I agree with the court in *Vendrella* and other courts that the fact that an animal is of a certain class—or, in the present case, breed—may create a genuine issue of material fact as to whether a landlord, who owed a plaintiff a duty of care, had constructive knowledge of the vicious propensities of the animal that caused harm. In the present case, whether the defendant had constructive knowledge that *this* dog had vicious propensities must be determined by the totality of the circumstances presented by the case. In making the factual determination regarding whether the defendant knew or should have known that the dog was vicious, I am not prepared to say that it is irrelevant as a matter of law that the dog is a member of a breed that presents heightened danger to others.[7]

In the present case, the defendant conceded at his deposition that pit bulls are widely known to be aggressive and dangerous dogs.[8] In my view, the behavioral characteristics of the pit bull breed, along with other evidence before the court, create a genuine issue of material fact as to whether the defendant had constructive knowledge of the vicious propensities of the dog that harmed the plaintiff. Accordingly, I concur in the decision to reverse the summary judgment rendered in favor of the defendant.

[1] With respect to the fact that the dog in this case is a pit bull or a mixed breed pit bull, the trial court stated that it "is not about to make a global finding that if a dog bite case involves a pit bull and/or bait pit bull, the landlord is on notice for vicious tendencies." (Internal quotation marks omitted.) The trial court's statement incorrectly suggests that it was being asked to decide whether the fact that the dog in the case was a pit bull establishes, by itself, as a matter of law, that the landlord had constructive

knowledge of its vicious tendencies. The plaintiff has made no such claim. Instead, she merely asserts that it is one relevant fact, among others, that raises a genuine issue of material fact regarding the landlord's constructive knowledge.

[2] The Court of Appeals of Maryland in *Tracey* concluded that a landlord should be held strictly liable for injuries caused by a tenant's pit bull. The Maryland legislature subsequently overturned the decision in *Tracey* by enacting Md. Code Ann., Cts. & Jud. Proc. § 3-1901 (b) (West 2014). This statute, however, only abrogated Maryland common law to the extent that it imposed strict liability on a landlord for injuries caused by a tenant's pit bull. It did not overturn Maryland common law as it existed on or prior to April 1, 2012. Maryland common law prior to April 1, 2012, provided that it is a relevant factual consideration in determining a landlord's liability for injuries caused by a tenant's dog that the animal was a pit bull. See, e.g., *Matthews* v. *Amberwood Associates Ltd. Partnership, Inc.*, 351 Md. 544, 561, 719 A.2d 119 (1998) (noting that "[t]he extreme dangerousness of this breed, as it has evolved today, is well recognized").

[3] At least one court has held that if a dog breed is known for "vicious tendencies," then "knowledge of vicious propensities can be implied due to the type of dog involved . . . ." *Plue* v. *Lent*, 146 App. Div. 2d 968, 969, 537 N.Y.S.2d 90 (1989). If, however, the breed is not known for vicious tendencies, then such an inference cannot be made. See id. *Plue*, however, did not involve a pit bull. See id. Instead, it involved an Afghan hound, which the court described as "a noble and dignified animal, which, when properly treated, is aloof to strangers and characteristically gentle with everyone." Id. The court contrasted this dog with a German Shepherd, which the court described as "a breed said to have inherited vicious tendencies from its ancestor, the wolf . . . ." (Citation omitted.) Id.

[4] In a case involving a horse at a commercial farm, our Supreme Court stated, "[i]n making the determination as to whether, as a matter of public policy, the owner or keeper of a domestic animal that has not previously exhibited mischievous propensities may be held liable for injuries that were foreseeable because the animal belonged to a class of animals with naturally mischievous propensities, we consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 322, 87 A.3d 546 (2014).

[5] The court addressed what a plaintiff must show to prove that the harm caused by a domestic animal was foreseeable to the defendant. "[T]o establish that an injury caused by a domestic animal was foreseeable, the plaintiff need not prove that the *species as a whole* has a natural tendency to inflict such harm, but only that the *class of animals* to which the specific animal belongs has such a tendency. . . . Conversely, if a plaintiff presents evidence that an entire species has naturally mischievous propensities, the defendant may rebut this evidence by producing evidence that the mischievous propensities of the specific animal, or of the particular class of animals to which the specific animal belongs, are less severe than the mischievous propensities of the species as a whole." (Citations omitted; emphasis added.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 333–34, 87 A.3d 546 (2014).

Thus, the court in *Vendrella* suggests that "class" is a subset of "species." As applied to the present case, this might mean that although all dogs do not have vicious propensities, certain breeds, like pit bulls, may possess such propensities.

[6] The common-law rule for negligence "has been modified substantially as it pertains to dogs. Specifically, General Statutes § 22-357 imposes strict liability on the 'owner or keeper' of a dog for harm caused by the dog, with limited exceptions." *Giacalone* v. *Housing Authority*, 306 Conn. 399, 405, 51 A.3d 352 (2012). This statute, however, does not impose strict liability on a landlord if a dog that lives in his or her building bites someone. As our Supreme Court observed, "a landlord is not the keeper of a dog for purposes of § 22-357 merely because the landlord acquiesces in the presence of the dog on leased premises, or because the landlord has the authority to require that the dog be removed from the premises in the event that it becomes a nuisance, or even because the landlord has the authority to require that certain conditions be placed on the use of the dog by its owner." *Auster* v. *Norwalk United Methodist Church*, 286 Conn. 152, 162, 943 A.2d

391 (2008). Thus, the statute did not abrogate a plaintiff's ability to sue a landlord for dog bite injuries under theories of common-law negligence or premises liability. See *Giacalone* v. *Housing Authority*, supra, 401–403.

[7] I disagree with the majority's suggestion that I am somehow intruding on a policy decision that should be left to our Supreme Court or the legislature. See footnote 2 of the majority opinion. Although either of those institutions is free to weigh in as a matter of policy on this issue, there simply is nothing inappropriate in this court determining, as a matter of common sense and factual relevance, that the breed of the dog is a fact that bears upon the question of whether the landlord had constructive knowledge of the dog's vicious tendencies.

[8] The following exchange occurred between the plaintiff's counsel and the defendant:

"[The Plaintiff's Counsel]: Mr. Tsiongas, I mean, do you agree that pit bulls are widely known to be aggressive and dangerous dogs?

* * *

"[The Defendant]: Well, I mean, I'm sure they are. A lot of people think so. I mean, I don't know. I guess it depends on the dog.

"[The Plaintiff's Counsel]: Do you know that pit bulls have been banned on U.S. military bases?

* * *

"[The Defendant]: No, I didn't know that.

"[The Plaintiff's Counsel]: All right. Did you know that the New York City Housing Authority, which is responsible for providing safe housing for 400,000 New Yorkers [in] around 328 housing projects bans pit bulls from its properties?

* * *

"[The Defendant]: No.

"[The Plaintiff's Counsel]: Do you know why [it] might do that?

* * *

"[The Defendant]: Okay. I don't know.

"[The Plaintiff's Counsel]: Do you have any idea?

* * *

"[The Defendant]: Well, I mean, I'm sure because [it has] problems with them. I mean, I don't know.

"[The Plaintiff's Counsel]: What kind of problems?

* * *

"[The Defendant]: All right. Well, I mean, I don't know what problems.

"[The Plaintiff's Counsel]: You don't know what problems pit bulls—

"[The Defendant]: Well, I'm sure some problems. Maybe they're considered a mean dog, or people abuse them. I don't know. I mean—

"[The Plaintiff's Counsel]: You said something, they may be a mean dog because people abuse them. What do you know about abused dogs?

* * *

"[The Defendant]: Well, I mean, from what I know is what I hear in the news, you know, people use them for fighting, you know, this and that. That's about it.

"[The Plaintiff's Counsel]: What happens to a dog, do you know what happens to a dog if it's been used in fighting?

"[The Defendant]: Well, any dog that's been, you know, abused or used in fighting, it's probably going to be mean, or hurt, or, I don't know. I mean—

* * *

"[The Plaintiff's Counsel]: Do you agree that dogs that are used in fighting might be mean?

"[The Defendant]: Sure. Yes. I'm sure, yes."

───────────────────────────