KAREN LECRAFT HENDERSON, Circuit Judge,
dissenting:
I am convinced the exclusionary rule does not apply to a violation of the Fourth Amendment knock-and-announce requirement, period. I had thought that was plain from the U.S. Supreme Court’s decision in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). My colleagues conclude, however, that because Hudson involved a knock-and-announce violation during the execution of a search warrant, it is limited to that context and does not apply to a knock-and-announce violation during the execution of an arrest warrant. Yet, nothing in Hudson supports their view. Hudson held that all violations of the knock-and-announce requirement are exempt from the exclusionary rule and my colleagues’ attempt to limit its reasoning to search warrants is unpersuasive. Indeed, the majority, concurrence and dissent in Hudson would all be surprised by my colleagues’ narrow reading.[1] *46 As would every member of this Court in 2006,[2] our sister circuits,[3] scholars on both sides of the exclusionary-rule debate[4] and even Hudson’s lawyer.[5] The majority *47 opinion in this case will not only create a direct circuit split, see United States v. Jones, 523 F.3d 31, 36 (1st Cir.2008), but it will “produc[e] preventable violence against officers,” “releas[e] dangerous criminals into society” and generate a “flood” of burdensome litigation. Hudson, 547 U.S. at 595, 126 S.Ct. 2159; see also infra pp. 55-57. Accordingly, I respectfully dissent.
I. BACKGROUND
The knock-and-announce requirement arises whenever a police officer seeks to enter someone’s residence without permission. See Sabbath v. United States, 391 U.S. 585, 589-90, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Before making such entry, an officer must knock, announce his authority and purpose (“Police! I have a warrant!”) and wait a reasonable time for an answer. See Miller v. United States, 357 U.S. 301, 308-09, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); United States v. Banks, 540 U.S. 31, 41, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003). The requirements, not surprisingly, are subject to exceptions. See, e.g., Miller, 357 U.S. at 310, 78 S.Ct. 1190 (police need not announce purpose if defendant already knows they are there to arrest him). Moreover, an officer can bypass the knock-and-announce requirement entirely if he has a “reasonable suspicion of exigency or futility.” Banks, 540 U.S. at 37 n. 3, 124 S.Ct. 521. Exigent circumstances include anticipated physical violence, apprehending an escaped prisoner and preventing the destruction of evidence. See Brigham City, Utah v. Stuart, 547 U.S. 398, 406, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006); Wilson v. Arkansas, 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).
The United States inherited the knock- and-announce rule from the English common law. See Hudson, 547 U.S. at 589, 126 S.Ct. 2159; see also Miller, 357 U.S. at 313, 78 S.Ct. 1190 (knock-and-announce requirement is “a tradition embedded in Anglo-American law”). It is usually traced to Semayne’s Case—a 17th century decision from the King’s Bench — although its origins may be more ancient still. See Wilson, 514 U.S. at 931-32 & n. 2, 115 5.Ct. 1914; see also Semayne’s Case. (1604) 77 Eng. Rep. 194 (K.B.) 196; 5 Co. Rep. 91 a, 91 b (citing 1275 statute and noting it was then “but an affirmance of the common law”). For federal law-enforcement officers, the knock-and-announce requirement has been mandated by statute since 1917. See Act of June 15, 1917, tit. XI, § 8, 40 Stat. 229. The current version provides:
The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and, purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
18 U.S.C. § 3109 (emphasis added).[6] By its terms, section 3109 governs the execution of “search warrants]” only. See *48 Southerland, 466 F.3d at 1085. And, under the common law, the knock-and-an-nounee requirement “had not been extended conclusively” to the arrest context at the Founding or even through the Civil War. See Wilson, 514 U.S. at 935, 115 S.Ct. 1914. Nevertheless, courts “gradually” extended the common-law requirement to arrests as well. Id. This Court, for example, did so in Accarino v. United States, 179 F.2d 456 (D.C.Cir.1949).
In 1995, the Supreme Court clarified in Wilson v. Arkansas that the knock-and-announce requirement is not only a creature of statute and common law, but also a requirement of the U.S. Constitution. See 514 U.S. at 934, 115 S.Ct. 1914. Specifically, the Fourth Amendment protects “[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures,” U.S. Const, amend. IV, and the knock-and-announce requirement “forms a part of the Fourth Amendment reasonableness inquiry,” Wilson, 514 U.S. at 930, 115 S.Ct. 1914. The Wilson Court declined, however, to decide the remedy for a knock-and-announce violation, leaving that question for another day. See id. at 937 n. 4, 115 S.Ct. 1914.
Nevertheless, this Court had already answered the question. Long before Wilson, we determined that the knock-and-announce requirement was grounded in the Fourth Amendment. See, e.g., McKnight v. United States, 183 F.2d 977, 978 (D.C.Cir.1950). And we applied the exclusionary rule to evidence obtained in violation of both the constitutional and statutory knock-and-announce requirements. See, e.g. Gatewood v. United States, 209 F.2d 789, 791-92 (D.C.Cir.1953); Woods v. United States, 240 F.2d 37, 39-40 (D.C.Cir.1956). Yet, our cases were largely a product of the times. The Supreme Court’s decisions during that era suggested that, once a violation of the Fourth Amendment occurred, the fruits of that violation must necessarily be suppressed. See, e.g., Mapp v. Ohio, 367 U.S. 643, 654, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (“all evidence obtained by an unconstitutional search and seizure [is] inadmissible in a federal court” (emphasis added) (citing Elkins v. United States, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960))); Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568-69, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (because “petitioner’s arrest violated his constitutional rights under the Fourth and Fourteenth Amendments[,] the evidence secured as an incident thereto should have been excluded”).
Those days, however, are long gone. “Subsequent case law” from the Supreme Court “rejected [a] reflexive application of the exclusionary rule.” Arizona v. Evans, 514 U.S. 1, 13, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995); see also Hudson, 547 U.S. at 591, 126 S.Ct. 2159 (“Expansive dicta in Mapp ... suggested wide scope for the exclusionary rule.... But we have long since rejected that approach.” (citations omitted)). Instead, suppression is a “last resort, not [a] first impulse.” Hudson, 547 U.S. at 591, 126 S.Ct. 2159. Given its “costly toll upon truth-seeking and law enforcement objectives,” the party “urging application” of the exclusionary rule shoulders a “high” burden. Pa. Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-65, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (quotation marks omitted); see also Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011) (“[Exclusion’s] bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort.” (citation and quotation marks omitted)).
*49 The Supreme Court has recognized several exceptions to the exclusionary rule. The rule does not apply if the constitutional violation is not the but-for cause of the discovery of the evidence, see Murray v. United States, 487 U.S. 538, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), or if the causal link is too “attenuated,” Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Additionally, over the last forty years, the Supreme Court has repeatedly exempted whole categories of cases from the exclusionary rule’s reach. See, e.g., Davis, 131 S.Ct. at 2423-24 (search compliant with subsequently overruled precedent); Illinois v. Krull, 480 U.S. 340, 349, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (search compliant with statute later deemed unconstitutional); Herring v. United States, 555 U.S. 135, 137, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (violation caused by police employee’s clerical error); Evans, 514 U.S. at 16, 115 S.Ct. 1185 (violation caused by court employee’s clerical error); Massachusetts v. Sheppard, 468 U.S. 981, 990-91, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984) (violation caused by magistrate judge’s clerical error); United States v. Leon, 468 U.S 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (evidence obtained in reasonable reliance on defective search warrant); Scott, 524 U.S. at 359, 118 S.Ct. 2014 (parole revocation hearings); INS v. Lopez-Mendoza, 468 U.S. 1032, 1050, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (civil deportation hearings); Stone v. Powell, 428 U.S. 465, 494-95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (federal habeas review); United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (grand jury proceedings); United States v. Havens, 446 U.S. 620, 627, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (evidence used to impeach defendant); United States v. Janis, 428 U.S. 433, 460, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (evidence seized by state police and used in federal civil proceedings). In doing so, the Supreme Court applies a balancing test: the Court will not extend the exclusionary rule to a particular context unless the deterrence benefits outweigh the societal costs. See, e.g., Leon, 468 U.S. at 909-10, 104 S.Ct. 3405.
Hudson v. Michigan falls neatly within this line of cases. In Hudson, the Supreme Court finally answered the question it had left unanswered in Wilson: namely, “whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement.” Hudson, 547 U.S. at 590, 126 S.Ct. 2159. The Court said “no” for two independent reasons. First, a knock- and-announce. violation is too “attenuated” from the seizure of evidence to warrant exclusion. See id. at 591-94, 126 S.Ct. 2159. Second, and “[q]uite apart from the requirement of unattenuated causation,” id. at 594, 126 S.Ct. 2159, under the exclusionary-rule balancing test, the deterrence benefit of suppression does not outweigh the social costs. See id. at 594-99, 126 S.Ct. 2159.
Shortly after Hudson was decided, we had the opportunity to determine its reach. In United States v. Southerland, we assessed whether “Hudson’s holding that the exclusionary rule did not apply to Fourth Amendment knoek-and-annoqnce violations” also applies to statutory knock-and-announce violations under section 3109. 466 F.3d at 1083. We concluded that it does. See id. at 1086. We noted that the standards governing section 3109, the Fourth Amendment and the common law have “merged” so that “[t]here is now one uniform knock-and-announce rule.” Id. at 1085-86; see also Ramirez, 523 U.S. at 73, 118 S.Ct. 992 (“ § 3109 codifies the common law in this area, and the common law in turn informs the Fourth Amendment”). *50 Unsurprisingly then, “each of the reasons[7] Hudson gave for not applying the exclusionary rule to knock-and-announce violations of the Fourth Amendment applies equally to violations of § 3109.” Souther-land, 466 F.3d at 1084. Southerland acknowledged that earlier Supreme Court precedent appeared to apply the exclusionary rule to violations of section 3109. See id. at 1084-85 (discussing Miller, 357 U.S. 301, 78 S.Ct. 1190, and Sabbath, 391 U.S. 585,- 88 S.Ct. 1755). But those cases did not technically apply section 3109 because they dealt with knock-and-announce violations in connection with arrests, not search warrants. Id. at 1085. More importantly, to the extent the arrest cases may have required exclusion, we concluded they were overruled by Hudson. See id. at 1085-86; see also id. at 1086 (“[W]e think it plain that Hudson, not Miller and Sabbath. now must control. Not only is Hudson the Court’s most recent pronouncement about whether evidence should be excluded as a remedy for knock-and-announce violations, but it is also the Supreme Court’s only thorough analysis of the issue.”) Accordingly, in Southerland, we held that the exclusionary rule does not apply to violations of section 3109 and expressly overruled contrary circuit precedent. See id. at 1086,1084 n. 1.
II. ANALYSIS
Weaver contends — and my colleagues agree — that Hudson v. Michigan is limited to search warrants and, because the knock-and-announce violation here occurred during the execution of an arrest warrant, the exclusionary rule is back in play. Yet I find the attempt to distinguish Hudson completely unpersuasive. Hudson’s holding contains no search-warrant limitation and its reasoning applies equally to searches and arrests.
A. HUDSON’S HOLDING
Hudson involved a knock-and-announce violation that occurred during the execution of a search warrant. See 547 U.S. at 588, 126 S.Ct. 2159. That fact does not mean, however, that Hudson’s holding is limited to the search-warrant context:
Every case is “limited to its facts,” if by that phrase one means that the court based its judgment on the facts presented to it. But most cases are also decided with reference to some more general normative principle which extends beyond the specific circumstances of the case before the court. Indeed, it is the existence of such broader norms which distinguishes a decision which is principled and rational from one which is ad hoc and arbitrary.
Robinson v. Diamond Hous. Corp., 463 F.2d 853, 862 (D.C.Cir.1972). Here, for instance, the Hudson Court framed the issue broadly. See 547 U.S. at 590, 126 *51 S.Ct. 2159 (“The issue here is ... whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement.”); id. at 588, 126 S.Ct. 2159 (“We decide whether violation of the ‘knock-and-announce’ rule requires the suppression of all evidence found in the search.”). These statements are not “pluck[ed]” out of context, Maj. Op. 35; they are the two instances in which the Hudson Court framed the question presented.[8] And nowhere in the opinion did the Hudson Court leave open the possibility of a different outcome in the arrest context or draw any distinction between searches and arrests.
Such a distinction would make little sense conceptually. There is but “one uniform knock-and-announce rule.” Souther-land, 466 F.3d at 1086. The rule governs all unauthorized entries into a residence, whether the police have a search warrant, an arrest warrant or no warrant at all. See Miller, 357 U.S. at 306, 309, 78 S.Ct. 1190. There is not one knoek-and-an-nounce requirement for search warrants and another knock-and-announce requirement for arrest warrants. Indeed, far from sharply distinguishing between arrests and searches, the case law expressly conflates them. See id. (knock-and-announce violation of federal officer “to execute [an] arrest without [a] warrant must be tested by criteria identical with those” governing “entry to execute a search warrant” and “arrest ... by virtue of a warrant”); Sabbath, 391 U.S. at 588, 88 S.Ct. 1755 (same). See also generally Michigan v. Summers, 452 U.S. 692, 704, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (downplaying “the distinction between a search warrant and an arrest warrant”); Malley v. Briggs, 475 U.S. 335, 344 n. 6, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (same). Indeed, the First Circuit has expressly rejected the distinction my colleagues draw here. See Pelletier, 469 F.3d at 201 (“Hudson applies with equal force in the context of an arrest warrant.”); Jones, 523 F.3d at 36 (“In the wake of Hudson, we have recognized the absence of an exclusionary rule for knock- and-announce violations, provided the police have a valid arrest warrant ... and reason to believe the target is inside.”).[9] *52 And other circuits have declined invitations to limit Hudson to its facts. See, e.g. Smith, 526 F.3d at 311 (“Nor, contrary to [the defendant’s] suggestion, does Hudson apply only when the officers have a search warrant____[T]he interests served by the knock-and-announce rule ... ‘have nothing to do with the seizure of the evidence,’ and nothing to do with whether the Fourth Amendment required the officers to obtain a warrant. There is nothing about the presence of a warrant that increases the value of deterring knock-and-announce violations, which the Court tells us ‘is not worth a lot,’ or that mitigates the ‘substantial social costs’ of suppressing the evidence.” (citations omitted)); Ankeny, 502 F.3d at 835-36 (“[W]e decline to limit Hudson so narrowly to its facts. The Supreme Court made it clear that, because the knock-and-announce rule protects interests that ‘have nothing to do with the seizure of ... evidence, the exclusionary rule is inapplicable’ to knock-and-announce violations.”).
Moreover, we do not interpret Hudson on a blank slate. As discussed, in Southerland, we considered whether Hudson overruled two Supreme Court cases — Miller and Sabbath — both of which involved knock-and-announce violations in the arrest context. In Miller and Sabbath, the police officers arrested the defendants in their respective residences without an arrest warrant and without complying with the knock-and-announce requirement. See Sabbath, 391 U.S. at 586-87, 88 S.Ct. 1755; Miller, 357 U.S. at 303-04, 78 S.Ct. 1190. The Supreme Court held in both cases that the knock-and-announce violations required suppression of the evidence found inside. See Sabbath, 391 U.S. at 586, 88 S.Ct. 1755; Miller, 357 U.S. at 314, 78 S.Ct. 1190. In Southerland, however, we concluded that Hudson not only governed these arrest cases — it overruled them. See Southerland, 466 F.3d at 1085-86. Southerland therefore held, directly contrary to my colleagues’ position here, that Hudson cannot be read as governing search warrants only. And Miller and Sabbath are no “obstacle” to my position, Maj. Op. 40, because, according to the Court, they were overruled by Hudson. See Southerland, 466 F.3d at 1085-86. Although a distinction could be drawn between a warrantless arrest (Miller and Sabbath) and the execution of an arrest warrant (this case), the distinction undercuts my colleagues’ position. If, as we said in Southerland, the exclusionary rule does not apply to a knock-and-announce violation when the police have no arrest warrant, then it plainly is inapplicable when the police have one. See Keining-ham v. United States, 287 F.2d 126, 129 (D.C.Cir.1960) (“[I]t is inconceivable that less should be required of an officer acting without a warrant than is required of him under a valid warrant.”). In sum, I believe Southerland’s interpretation of Hudson’s scope directly refutes the search/arrest distinction my colleagues draw. Southerland’s analysis was not dicta and it was unanimously endorsed by the full Court via Irons footnote; accordingly, we should follow it here. See United States v. Emor, 785 F.3d 671, 682 (D.C.Cir.2015) (“[W]e cannot overrule a prior panel’s decision, except via an Irons footnote or en banc review.”).
B. HUDSON’S REASONING
Even if Hudson did not directly control this case (on its own terms and as interpreted in Southerland), its reasoning applies with equal force to the arrest-warrant context. The Hudson Court deemed the exclusionary rule inapplicable to knock- *53 and-announee violations on two alternative grounds: attenuation and cost-benefit balancing. Both grounds are holdings and so Weaver and my colleagues must successfully distinguish them both. See Woods v. Interstate Realty Co., 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) (“[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.”). In my view, they successfully distinguish neither.
i. Attenuation
Weaver spends most of his brief explaining why here, unlike in Hudson, the knock-and-announce violation was the but-for cause of the discovery of the evidence. His argument goes as follows:
• Because the ATF officers violated the knock-and-announce requirement, Weaver did not have an opportunity to surrender himself at the door.
• Because Weaver did not surrender himself at the door, the officers forced their way inside.
• Because they were inside Weaver’s apartment, the officers were able to see the marijuana in plain view.
• Based on their plain-view observations, the officers obtained. a search warrant.
• In executing the search warrant, the officers obtained the evidence ultimately used to convict Weaver.
Stated in reverse, Weaver believes the search warrant was invalid because the plain-view observations were invalid because the entry was invalid because the police did not knock and announce.
Even assuming Weaver’s causation theory is correct, he is wrong to suggest that the absence of but-for causation is the “core” of Hudson. Appellant’s Br. 21. On the contrary, the absence of but-for causation comprised all of two sentences of the Court’s opinion. See Hudson, 547 U.S. at 592, 126 S.Ct. 2159. Indeed, the Hudson Court expressly downplayed the significance of but-for causation. See id. (“Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression.”); id. (“[Exclusion may not be premised on the mere fact that a constitutional violation was a ‘but-for’ cause of obtaining evidence.” (emphasis added)); id. (“[E]ven if the illegal entry here could be characterized as a but-for cause of discovering what was inside, we have never held that evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police.” (emphasis added) (quotation marks omitted)); id. (“[B]utfor cause, or causation in the logical sense alone, can be too attenuated to justify exclusion.” (quotation marks and citation omitted)); id. at 593, 126 S.Ct. 2159 (“Attenuation ... occurs when, even given a direct causal connection, the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.” (emphasis added)).[10] The real core of *54 Hudson’s attenuation analysis is the conclusion that “[t]he interests protected by the knock-and-announce requirement ... do not include the shielding of potential evidence from the government’s eyes.” Id. The interests that the knock-and-announce requirement does protect — safety, property and dignity — “have nothing to do with the seizure of the evidence.” Id. at 594, 126 S.Ct. 2159.[11]
Weaver contends, and my colleagues agree, that the knock-and-announce requirement protects another interest: the privacy interest in keeping the police out of one’s home. See Maj. Op. 37-39. The dissent in Hudson made precisely the same argument. See 547 U.S. at 620-21, 126 S.Ct. 2159 (Breyer, J., dissenting) (“[The majority] does not fully describe the constitutional values, purposes, and objectives underlying the knock-and-announce requirement. That rule ... [also] protects the occupants’ privacy by assuring them that government agents will not enter their home without complying with those requirements....”). Yet, according to the Hudson majority, the only “privacy” interests protected by the knock-and-announce requirement are “those elements ... that can be destroyed by a sudden entrance,” ie. the ability to “get out of bed,” “pull on clothes” and “prepare ... for the entry of the police.” Id. at 594, 126 S.Ct. 2159 (majority op.); see also id. at *55 593, 126 S.Ct. 2159 (“[C]ases excluding the fruits of unlawful warrantless searches say nothing about the appropriateness of exclusion to vindicate the interests protected by the knock-and-announce requirement. ... The interests protected by the knock-and-announce requirement are quite different.” (citing, inter alia, Weeks, 232 U.S. 383, 34 S.Ct. 341; Mapp, 367 U.S. 643, 81 S.Ct. 1684) (emphasis added)). As a lower court, we are not free to contradict the Supreme Court’s exhaustive description of the interests protected by the knock-and-announce requirement. See Winslow v. FERC, 587 F.3d 1133, 1135 (D.C.Cir.2009) (“Vertical stare decisis— both in letter and in spirit — is a critical aspect of our hierarchical Judiciary headed by ‘one supreme Court.’ ” (quoting U.S. Const, art. 111, § 1)).
Of course, the arrest-warrant requirements — that a warrant be issued by a neutral magistrate based on probable cause and that the police have reason to believe the suspect is present at the described locale, Payton v. New York, 445 U.S. 573, 602-03, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) — protect the privacy interest that Weaver identifies. See id. at 589-90, 100 S.Ct. 1371. But he concedes that those requirements were complied with here. See Appellant’s Reply Br. 5 n. 2. The ATF officers had a valid arrest warrant and therefore had the right to enter Weaver’s apartment to effectuate his arrest. See Payton, 445 U.S. at 602-03, 100 S.Ct. 1371. The knock-and-announce violation he identifies, standing alone, does not implicate his privacy interest in keeping the police at bay from his residence and, thus, suppression would not vindicate it. See Hudson, 547 U.S. at 593, 126 S.Ct. 2159; see also United States v. Ceccolini, 435 U.S. 268, 279, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (for exclusionary rule to apply, “[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve”). And arrest-warrant requirements, like search-warrant requirements, are sufficient to protect the privacy interest my colleagues identify. See Payton, 445 U.S. at 602-03, 100 S.Ct. 1371 (“[A]n arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate’s determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen’s participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law.”); Summers, 452 U.S. at 704, 101 S.Ct. 2587 (same). In sum, Hudson’s attenuation analysis exempts from the exclusionary rule a knock-and-announce violation committed during the execution of an arrest warrant.
ii. Balancing Test
Even if Hudson’s attenuation analysis were limited to search warrants, the Court’s balancing-test analysis is assuredly not. The Hudson Court concluded that the social costs of applying the exclusionary rule to knock-and-announce violations far exceed the deterrence benefits. See 547 U.S. at 599, 126 S.Ct. 2159. This Court is not free to recalibrate the scales. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (“When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.”). Faithfully adhering to Hudson’s cost-benefit analysis, I think the exclusionary rule plainly does not apply to arrest warrants as well. Indeed, the Hudson Court’s balancing analysis in no way relied on the existence vel non of a search warrant.
*56 The costs identified in Hudson are exactly the same here. In both the search-warrant and arrest-warrant contexts, suppression will “releas[e] dangerous criminals into society” by excluding “relevant incriminating evidence.” Hudson, 547 U.S. at 595, 126 S.Ct. 2159. It will also drain judicial resources by “generating] a constant flood of alleged failures to observe the [knock-and-announce] rule,” which claims require “extensive litigation” over “difficult,” fact-specific inquiries like “what constituted a ‘reasonable wait time’ ” and whether an exception to the knock-and-announce requirement applied. Id.; see also id. at 589-90, 126 S.Ct. 2159 (explaining that knock-and-announce requirement “is not easily applied” and that “it is not easy to determine precisely what officers must do”). And, in both contexts, the “massive” consequences of suppression will encourage police officers to “wait longer than the law requires,” causing “preventable violence against officers” and “the destruction of evidence.” Id. at 595, 126 S.Ct. 2159. Indeed, Weaver never contends otherwise.
My colleagues claim that applying the exclusionary rule in the arrest-warrant context will not trigger a flood of burdensome litigation because “officers rarely violate the knock-and-announce rule.” Maj. Op. 44. But they miss the point made in Hudson. Whether or not a knock-and-announce violation in fact occurs, every criminal defendant will claim it did because “[t]he cost of entering this lottery would be small, but the jackpot enormous: suppression of all evidence, amounting in many cases to a get-out-of-jail-free card.” Hudson, 547 U.S. at 595, 126 S.Ct. 2159. Thus, in every case in which the police find evidence during execution of an arrest warrant, the defendant can and will claim that they violated the knock-and-announce requirement by, for example, not waiting long enough before entering. See id. It is the mere allegation of a knock-and-announce violation, regardless whether it ultimately has merit, that will require “extensive litigation” via suppression hearings. Id. And the burdens on the judiciary in adjudicating these claims will be even greater than usual:
Unlike-the warrant or Miranda requirements, compliance with which is readily determined (either there was or was not a warrant; either the Miranda warning was given, or it was not), what constituted a “reasonable wait time” in a particular case (or, for that matter, how many seconds the police in fact waited), or whether there was “reasonable suspicion” of the sort that would invoke [an] exceptionf to the knock-and-announce requirement], is difficult for the trial court to determine and even more difficult for an appellate court to review.
Id. At bottom, my colleagues argue with, rather than distinguish, the High Court’s analysis in Hudson.
My colleagues’ decision will also endanger law-enforcement officers in the same way that Hudson predicted. The point made in Hudson is not that the exclusionary rule will deter police officers from violating the knock-and-announce requirement but that it will lead to over-deterrence: *57 Id. (citation omitted). After today, this risk and uncertainty will confront every police officer who executes an arrest warrant in the District of Columbia.
*56 Another consequence of the incongruent remedy [of applying the exclusionary rule to knock-and-announce violations] would be police officers’ refraining from timely entry after knocking and announcing. As we have observed, the amount of time they must wait is necessarily uncertain. If the consequences of running afoul of the rule were so massive, officers would be inclined to wait longer than the law requires — producing preventable violence against officers....
*57 No matter the costs identified in Hudson, my colleagues ultimately believe they are outweighed by an alleged increase in deterrence benefits in the arrest-warrant context. See Maj. Op. 43-44. Weaver contends, and my colleagues agree, that police officers have a greater incentive to violate the knock-and-announce requirement when executing arrest warrants than search warrants: if officers can enter straightaway, they can search the suspect’s residence more broadly than they otherwise could. But “the value of deterrence depends upon the strength of the incentive to commit the forbidden act” and, as the Hudson Court reminds us, “deterrence of knock-and-announce violations is not worth a lot.” 547 U.S. at 596, 126 S.Ct. 2159. Officers can already bypass the knock-and-announce requirement if they have a “reasonable suspicion” that the occupant will destroy evidence or violently resist arrest. Id. Moreover, once they arrest the occupant, the police can search his person and the areas within his reach, see In re Sealed Case 96-3167, 153 F.3d 759, 767 (D.C.Cir.1998), and conduct a protective sweep of the home and seize any incriminating evidence in plain view, see Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). These searches, in turn, will often produce the probable cause necessary to obtain a full-blown search warrant.
My colleagues believe the protective sweep authorized by the Fourth Amendment is more “limited” than it in fact is. Maj. Op. 38. In the course of a residential arrest, officers can “look[] in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched” without any probable cause or reasonable suspicion. United States v. Ford, 56 F.3d 265, 269 (D.C.Cir.1995) (quoting Buie, 494 U.S. at 334, 110 S.Ct. 1093); see also United States v. Thomas, 429 F.3d 282, 287 (D.C.Cir.2005) (Buie authorizes suspicion-less sweep of “the entirety of a small apartment”). The officers can also sweep more broadly through the residence if they have a reasonable suspicion that dangerous confederates may be present, see Buie, 494 U.S. at 334, 110 S.Ct. 1093 — a common suspicion when arresting a suspected drug dealer like Weaver, see United States v. Cash, 378 F.3d 745, 749 (8th Cir.2004) (“[A]n officer arresting a suspected drug trafficker ... is justified in conducting a Buie sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest.”). Most importantly, this latter type of sweep allows officers to go inside the residence even if the arrestee surrenders outside the door. See United States v. Henry, 48 F.3d 1282, 1284 (D.C.Cir.1995) (Buie authorizes protective sweep of residence even though “the police arrested the defendant outside rather than inside his dwelling”).
According to Weaver, however, the police cannot conduct a protective sweep if the suspect surrenders himself at the door — something he has no opportunity to do when the police violate the knock-and-announce requirement. But see Thomas, 429 F.3d at 287; Henry, 48 F.3d at 1284. Yet, the notion that the police will forego knocking and announcing just to broaden their search authority defies common sense. Officers no doubt prefer the subject of an arrest warrant — a suspected felon, mind you — to voluntarily surrender at the door breaking in and surprising him risks a life-threatening struggle inside. See Miller, 357 U.S. at 313 n. 12, 78 S.Ct. 1190 (“Compliance [with the knock-and-announce requirement] is ... a safeguard *58 for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder.”); Sabbath, 391 U.S. at 589, 88 S.Ct. 1755 (“[T]he rule of announcement ... safeguard[] officers, who might be mistaken, upon an unannounced intrusion into a home, for someone with no right to be there.”). Tellingly, Weaver cites no evidence that police officers routinely violate the knock-and-announce requirement during the execution of arrest warrants. Cf. Hudson, 547 U.S. at 599, 126 S.Ct. 2159 (“[Pjolice forces across the United States take the constitutional rights of citizens seriously. There have been wide-ranging reforms in the education, training, and supervision of police officers.... [Mjodern police forces are staffed with professionals.” (quotation marks omitted)). Indeed, my colleagues appear to agree that knock-and-announce violations during the execution of arrest warrants will be “rare! ],” with or without the exclusionary rule. Maj. Op. 44. What is it, then, that needs to be deterred? Cf. Herring, 555 U.S. at 147-48, 129 S.Ct. 695 (emphasizing absence of “systemic error” because “the deterrent effect of suppression must be substantial,” not “marginal”); Hudson, 547 U.S. at 604, 126 S.Ct. 2159 (Kennedy, J., concurring in part and concurring in judgment) (suppression is inappropriate due to absence of “any demonstrated pattern of knock- and-announce violations” (emphasis added)).[12]
Even if there were a greater need for deterrence in the arrest-warrant context, my colleagues make no attempt to explain why the “massive deterrence” of the exclusionary rule is required, given the availability of potential civil liability and internal police discipline. Hudson, 547 U.S. at 596, 126 S.Ct. 2159. If a federal law-enforcement officer violates the knock-and-announce requirement while executing an arrest warrant, the arrestee may file a Bivens action against him. See id. at 597, 126 S.Ct. 2159. Public-interest lawyers would be willing to handle the suit, id. at 598, 126 S.Ct. 2159; the suit would be worthwhile given the availability of attorney’s fees, id. at 597, 126 S.Ct. 2159; and the officer-defendants would not be entitled to qualified immunity, id. at 598, 126 S.Ct. 2159. According to Hudson, we must “assume! ]” that “civil liability is an effective deterrent.” Id. Likewise, we must “assume” that “internal police discipline” is an adequate deterrent as well. Id. at 598-99, 126 S.Ct. 2159. Police departments have an incentive to train their officers to follow the knock-and-announce rule in order to avoid municipal liability, id. at 599, 126 S.Ct. 2159, and police officers have an incentive to comply for the sake of their careers, id.
In sum, the deterrence benefit of applying the exclusionary rule to knock-and-announce violations is not meaningfully greater in the arrest context than in the search context. At most, my colleagues have demonstrated that the deterrence benefit of suppression could be somewhat higher in the arrest-warrant context. This does not go far enough. The 1960s are over and we are no longer in the “heydays” of the exclusionary rule. Id. at 597, 126 S.Ct. 2159. The rule is a “last resort” *59 and there is a strong presumption against its application. Id. at 591, 126 S.Ct. 2159; Davis, 131 S.Ct. at 2427. The mere “existence” of deterrence benefits is “not ... a sufficient condition” for suppression. Hudson, 547 U.S. at 596, 126 S.Ct. 2159; see also Calandra, 414 U.S. at 350, 94 S.Ct. 613 (“[I]t does not follow that the Fourth Amendment requires adoption of every proposal that might deter police misconduct.”); Leon, 468 U.S. at 910, 104 S.Ct. 3405 (same). Instead, “the deterrence benefits of suppression must outweigh its heavy costs,” Davis, 131 S.Ct. at 2427 (emphasis added) — a condition, the Supreme Court almost never finds satisfied. See supra p. 49 (collecting cases). In Hudson, the Court did not say that the balance was close: it said the social costs are “considerable,” the incentive to violate the knock-and-announce requirement “minimal” and the preexisting deterrences “substantial.” 547 U.S. at 599, 126 S.Ct. 2159. My colleagues may have added a pebble to one side of the scale but they have ignored the boulder on the other side. Applying the exclusionary rule to knock- and-announce violations in the arrest-warrant context will drain judicial resources, let guilty criminals go free and risk the lives of police officers. See id. at 595, 126 S.Ct. 2159. Compared to these “substantial social costs,” id. at 596, 126 S.Ct. 2159, the possibility that police officers will enter homes without knocking to prevent occupants from surrendering at the door — a risk that is neither proven nor plausible— is trivial. Even if this worst-case scenario is theoretically possible, the “incremental” benefit gained from deterring it does not justify the blunderbuss remedy of suppression. Harris, 495 U.S. at 20, 110 S.Ct. 1640. Instead, the cost-benefit analysis performed in Hudson renders the exclusionary rule inapplicable to knock-and-announce violations that occur during the execution of search warrants and arrest warrants alike.
For the foregoing reasons, Hudson v. Michigan governs this case. I would affirm the district court’s denial of Weaver’s motion to suppress and, accordingly, I respectfully dissent.

. See Hudson, 547 U.S. at 590, 126 S.Ct. 2159 (defining question presented broadly as "whether the exclusionary rule is appropriate for violation of the knock-and-announce requirement”); id. at 588, 126 S.Ct. 2159 (same); id. at 603-04, 126 S.Ct. 2159 (Kenne *46 dy, J., concurring in part and concurring in judgment); id. at 604, 126 S.Ct. 2159 (Breyer, J., dissenting) ("[T]he Fourth Amendment normally requires law enforcement officers to knock and announce their presence before entering a dwelling. Today’s opinion holds that evidence seized from a home following a violation of this requirement need not be suppressed.”).

. See United States v. Southerland, 466 F.3d 1083, 1083 (D.C.Cir.2006) ("Hudson’s holding [is] that the exclusionary rule did not apply to Fourth Amendment knock-and-announce violations”), opinion unanimously endorsed by Irons footnote. 466 F.3d at 1084 n. 1.

. See, e.g., United States v. Pelletier, 469 F.3d 194, 201 (1st Cir.2006) ("Hudson applies with equal force in the context of an arrest warrant.”); United States v. Smith, 526 F.3d 306, 311 (6th Cir.2008) ("Nor, contrary to [defendant’s] suggestion, does Hudson apply only when the officers have a search warrant.”); United States v. Ankeny, 502 F.3d 829, 835-36 (9th Cir.2007) ("[W]e decline to limit Hudson so narrowly to its facts.”); United States v. Cos, 498 F.3d 1115, 1132 n. 3 (10th Cir.2007) (Hudson "held that, when a particular kind of mistake is made by police officers themselves — a violation of the Fourth Amendment's knock-and-announce requirement— the exclusionary rule is not applicable” (emphasis added)); United States v. Collins, 714 F.3d 540, 543 (7th Cir.2013) ("Hudson ... holds that exclusion is not an appropriate remedy for violations of the knock-and-announce rule.”); see also State v. Cable, 51 So.3d 434, 441 (Fla.2010) (stating, in arrest-warrant case, that "[u]nder Hudson, it is clear that the exclusionary rule does not apply to Fourth Amendment knock-and-announce violations”); Berumen v. State, 182 P.3d 635, 637 (Alaska Ct.App.2008) (same); State v. Marcum. No. 04-CO-66, V 15, 2006 WL 3849861, at *3 (Ohio Ct.App. Dec. 28, 2006) (“Based on Hudson, no evidence should have been suppressed due to a violation of the knock-and-announce rule” during execution of arrest warrant); In re Frank S., 142 Cal.App.4th 145, 47 Cal.Rptr.3d 320, 324 (2006) ("Defendant's contention that Hudson applies only where the police have a search warrant is not persuasive. Hudson held that a violation of the knock-and-announce rule does not justify application of the exclusionary rule. The rule turns on the nature of the constitutional violation at issue, not the nature of the police’s authority for entering the home.” (citations omitted)).

. See, e.g. James J. Tomkovicz, Hudson v. Michigan and the Future of Fourth Amendment Exclusion. 93 Iowa L.Rev. 1819, 1839— 41 & n. 111 (2008) (explaining why Hudson cannot be limited to search warrants); 1 Wayne R. Lafave, Search & Seizure: A Treatise on the Fourth Amendment § 1.6(h) & n. 165 (5th ed.2014) (“Whatever one might think of Hudson’s fruit-of-the-poisonous-tree holding, the majority's ... alternate deterrence/costs holding ... is open to broader application____ Applying only a fruits analysis, it would seem that notwithstanding Hudson there would be instances in which items not named in the warrant would be deemed the fruit of a premature entry or an entry without notice because absent that violation the evidence would not have been discovered. But ... it is to be doubted that it could likewise be said that there is a greater need for deterrence of those knock-and-announce violations that serendipitously produce such evidence.” (citation and some footnotes omitted)); 2 Drug Abuse & the Law Sourcebook § 9:14 (2014) (“The [Hudson ] Court's ... balancing [of] the deterrence benefit against the social cost of exclusion!] is likely to lead to the same result regardless of whether the entry is to serve a search warrant or an arrest warrant.”); Mark A. Summers, The Constable Blunders but Isn’t Punished: Does Hudson v. Michigan’s Abolition of the Exclusionary Rule Extend Beyond Knock-and-Announce Violations?. 10 Barry L.Rev. 25, 37 (2008) ("Because the[ ] interests [identified in Hudson ] are the same in every knock-and-announce rule case, there are no knock-and-announce violations where applying the exclusionary remedy would be justified.”); John B. Rayburn, Note, What Is "Blowing in the Wind”? Reopening the Exclusionary Rule Debate, 110 W. Va. L.Rev. 793, 823-24 (2008) ("extending] Hudson to the execution of arrest warrants ... seem[s] to be elementary and non-problematic”).

. David A. Moran, The End of the Exclusionary Rule, Among Other Things: The Roberts *47 Court Takes on the Fourth Amendment. 2006 CATO SUP. CT. REV. 283, 283 ("[In] my 5-4 loss in Hudson v. Michigan ..., the Court held that when the police violate the Fourth Amendment 'knock and announce requirement’ the normal Fourth Amendment remedy, exclusion of the evidence found after the violation, does not apply.”).

. Section 3109 also applies, by reference, to local law-enforcement officers operating in the District of Columbia. See D.C.Code § 23-524(a) (“An officer executing a warrant directing a search of a dwelling house or other building or a vehicle shall execute such warrant in accordance with section 3109 of Title 18, United States Code.”).

. The Southerland Court identified the Hudson "reasons” as follows: that the knock-and-announce requirement does not protect an individual’s interest in shielding “potential evidence from the government's eyes,” Hudson, 126 S.Ct. at 2165; that “imposing th[e] massive remedy” of suppression "for a knock- and-announce violation would generate a constant flood of alleged failures to observe the rule,” id. at 2165-66; that questions about whether the police waited long enough before entering would be "difficult for the trial court to determine and even more difficult for an appellate court to review,” id. at 2166; that any deterrent value from suppressing evidence in these cases would not be “worth a lot,” id.; that civil damage actions would still provide some deterrence, id. at 2166-68; and that "[a]nother development over the past half-century that deters civil-rights violations is the increasing professionalism of police forces, including a new emphasis on internal police discipline,” id. at 2168.
466 F.3d at 1084 (alterations in original).

. My colleagues emphasize the word “search” in the Hudson Court's statement that "[w]e decide whether violation of the ‘knock-and-announce’ rule requires the suppression of all evidence found in the search." Hudson, 547 U.S. at 588, 126 S.Ct. 2159 (emphasis added). Their italicization is unhelpful. The Court said “search,” not "search warrant.” Whenever the police enter a residence to execute an arrest warrant and seize evidence incident to arrest or in plain view, a “search” occurs.
My colleagues also note that the Hudson Court "relied on ... precedents concerning search warrants.” Maj. Op. 36. That is unsurprising, as the “[clases acknowledging a need to knock and announce typically involve the execution of search warrants.” Tomko-vicz, supra, at 1837 n. 92 (collecting cases). In any event, the Hudson Court did not rely exclusively on such precedents. Its attenuation analysis, for example, was primarily grounded in New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990) — a case involving a warrantless residential arrest. See Hudson, 547 U.S. at 593, 126 S.Ct. 2159." It relied on Miller and Sabbath as well. See id. at 594, 126 S.Ct. 2159.

. Before Hudson, the Seventh Circuit had likewise concluded that the exclusionary rule does not apply to knock-and-announce violations, see United States v. Langford, 314 F.3d 892, 894-95 (7th Cir.2002), and had extended that holding to the arrest-warrant context, see United States v. Smith, 171 Fed.Appx. 516, 519 (7th Cir.2006). It has apparently not departed from this position post — Hudson. See Evans v. Poskon, 603 F.3d 362, 364 (7th Cir.2010) (“The exclusionary rule is used in only a subset of all constitutional'violations— and excessive force in making an arrest or seizure is not a basis for the exclusion of evidence.... Cf. Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (violation of constitutional knock-and- *52 announce rule does not justify exclusion).” lone citation omitted)).

. At times, my colleagues appear to agree with Weaver that Hudson was primarily about the absence of but-for causation. See Maj. Op. 30-31, 34. They emphasize Justice Kennedy's concurrence, in which he said "the failure to wait at the door cannot properly be described as having caused the discovery of evidence." Hudson, 547 U.S. at 604, 126 S.Ct. 2159 (Kennedy, J., concurring in part and concurring in judgment). His concurrence ultimately does not support their view, however, as he also stated more broadly that suppression is unwarranted in the “context of the knock-and-announce requirement” writ large. Id. at 603, 126 S.Ct. 2159; see also id. at 604, 126 S.Ct. 2159 (“[E]xtension [of the exclusionary rule to knock-and-announce violations] also would have significant practical implications, adding to the list of issues requiring resolution at the criminal trial ques *54 tions such as whether police officers entered a home after waiting 10 seconds or 20.” (emphasis added)). More importantly, he fully joined “Parts I through III” of the majority opinion in Hudson (the attenuation and cost-benefit balancing holdings). See id. at 604, 126 S.Ct. 2159. As a lower court, we are bound to follow the Supreme Court's majority opinion, not the concurrence of a single Justice. See Hansford v. United States, 303 F.2d 219, 225 (D.C.Cir.1962) (en banc); see also United States v. Duvall, 740 F.3d 604, 610 (D.C.Cir.2013) (Kavanaugh, J., concurring in denial of rehearing en banc) ("Justices who join the majority may of course express additional thoughts in a concurrence, but concurrences do not bind lower courts in cases where there is a majority opinion.”). Ultimately, my colleagues agree that we must "employ Hudson’s legal framework in considering whether the exclusionary remedy is appropriate here,” including its attenuation and cost-benefit balancing holdings. Maj. Op. 35.

. My colleagues suggest that the Hudson Court limited its attenuation analysis to the search-warrant context in noting that “the knock-and-announce rule has never protected ... one's interest in preventing the government from seeing or taking evidence described in a warrant.” 547 U.S. at 594, 126 S.Ct. 2159 (emphasis added). Elsewhere, however, the Court made the same point without any "search warrant” limitation. See id. at 593, 126 S.Ct. 2159 (“The interests'protected by the knock-and-announce requirement ... do not include the shielding of potential evidence from the government’s eyes.”); accord Smith, 526 F.3d at 311 ("Nor,. contrary to [defendant's] suggestion, does Hudson apply only when the officers have a search warrant. The explanations given by Hudson are not confined to situations in which the officers violate the knock-and-announce rule after obtaining a warrant....”). As one commentator puts it:
Hudson’s holding [cannot be confined] to "evidence described in a warrant”.... The purposes of the knock-and-announce rule identified by the Court ... did not include shielding undescribed items from the authorities. Surely, this was no oversight and is more telling than the limiting language used to describe what the rule does not safeguard. The explanation for the Court's reference to "evidence described in a warrant” may well be that the evidence in Hudson was of that variety. In any event, it is inconceivable that the majority would have ordered suppression of the gun if the officers had possessed a warrant only for contraband narcotics and had seized the firearm in 'plain view' during a lawful search. And the cost-benefit balance struck in Hudson would be no different for evidence that had not been specified in a search warrant.
Tomkovicz, supra, at 1840 & n. 105 (citation and some' footnotes omitted).

. Elsewhere, my colleagues claim “[t]he. facts of this case” demonstrate that officers will strategically violate the knock-and-announce requirement to broaden their search authority. Maj. Op. 43. Even assuming a single anecdote can ever be evidence of a larger trend, Weaver has not alleged at any stage of this litigation that the ATF officers failed to announce their purpose (“We have a warrant”) in order to gain entry to his apartment. In fact, the officers knocked, announced their authority (“Police”) and waited before attempting to enter — actions that make little sense if their purpose was to catch Weaver by surprise.